[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 14, 1989, the Department of Children and Youth Services filed joint petitions to terminate the parental rights of the parents of the above first named girls, issue of the marriage of these divorced parents. On August 31, 1989, the petitioner filed a motion to amend these petitions prior to the return date of the hearing, September 11, 1989. On November 6, 1989, the petitioner filed a second motion to amend which was granted after hearing on November 13, 1989.
The trial of this matter extended over many days beg inning in December, 1989 and ending in early April, 1990. The history of the case is that on January 23, 1985 an ex parte order of temporary custody as to each child was issued by the Court followed by a hearing on January 28, 1985 which kept the orders in place subject to a full hearing on the neglect petitions.
As to one child, physical abuse was claimed and general allegations of neglect as to the other child. The case was brought to the petitioner's attention by physicians. After trial, neglect was found and the children's care and custody was given to the petitioner. Since then the commitments have been extended for successive periods of eighteen months by the Court on September 15, 1986, July 5, 1988, and September 11, 1989.
As to the father, the evidence is absolutely clear and convincing that the petitioner's allegations are proved. The Court finds that the father has abandoned these little girls. In fact, he has not visited with them since August, 1986; nor has he sent them any birthday cards or presents nor provided any Christmas presents, nor inquired of the petitioner as to their well being, nor provided any clothing or thing no matter how small to show these girls any interest or affection.
The father, who is fifty-three (53) years of age, looks more like a man in his seventies. He is a long term alcoholic who has been hospitalized at various times in recent year's in order to detoxify his system and to treat him for illnesses aggravated by the alcohol. Due to all the drinking he has done since age sixteen (16), the father is no longer physically capable of working and has not worked for more than two years.
When this case first began in 1985, father was allowed unsupervised visitation. With the continuing reports from CT Page 960 the children's caretakers that he was always turning up drunk, the caseworker told him in 1986 he could only have supervised visitation until such time as he entered an a alcohol program and showed progress in same. That is when father stopped visiting and never sought it thereafter. He has steadfastly over the years refused treatment for the alcohol abuse. At this point in his life, he is no longer able to take care of himself and quite obviously is incapable of caring for his children.
But being unable to physically or financially provide for one's children is not the measure of a father. The measure is, despite his handicaps, has he and does he show his children affection? Does he act in any way to provide parental care and guidance? The answer to all these foregoing questions is clearly in the negative.
The evidence as to the father clearly and convincingly establishes the petitioner's claims. Furthermore, this situation has existed for over five years. The children, who are now just about ten (10) and nine (9) years of age, have spent more than half their lives without their father; he is a name and not a person to them. They never ask about him and it is plain to see the reasons for same.
Clearly, no additional time would or could change the father's lifestyle. There is no hope that he would do anything to become a parent to these girls and establish any parent-child relationships with them.
The petitions having been proved as to the father, the Court, based upon all the evidence, finds that the best interests of the children will be effectively served by terminating the father's parental rights in and to Priscilla H. and Pamela H. Therefore, the Court orders that the parental rights of the father are terminated.
The situation as to the mother of these girls is much different. The mother, who is twenty-eight (28) years old is an unsophisticated person whose intellectual capacities are limited. Her thinking remains concrete. Her ability to arrange her life in accordance with her long term goals was hampered by her inability to see and understand her problems except in a compartmentalized way. She had low self-esteem, especially when dealing with persons of higher intellect. Thus, as a young woman, she was easily led. Unfortunately, she took up with people of little character who also abused alcohol and/or drugs. The Court can categorically find that the mother did not engage in such substance abuse. CT Page 961
The Court has wrestled with the facts of this case for quite some time after the close of trial. That is simply because of the dire effect a decision in such a matter as this can have on children, let alone their parents. The Court had no question in its mind about the father's case. But as to the mother, the Court has been balancing past errors of the mother against the past two and one-half (2-1/2) years of her history.
The Court finds the mother has made a complete change in her life. Where she had been led by bad companions, she now has good companions. Her family is solidly behind her, giving assistance when needed yet making her stand on her own and be responsible for the results of her decisions. Even the child psychologist has seen positive changes over these last few years in the mother.
She has always held a job but not one from which she could get ahead a little and provide a home for her girls. Where she had gone with alcoholic and abusive men like the children's father, she now has a long, steady, healthy relationship with a kind, hard working young man. His intellectual abilities are not much higher than hers and this is good because it results in a stronger more confident relationship between these two persons. With their separate strengths, each is able to provide in a family unit what the other party may be missing or require more of.
Together, and with the help of the mother's uncle, a suitable apartment has been obtained. The parties have furnished it. The two of them pooled their money in order to save for that purpose. They have purchased and paid for the furniture needed for the girls to live with them.
The girls love their mother and are fond of the young man referred to above whom she planned to marry this past June.
The difficulty in this case arose between the mother who, because of her intellectual liability, was not able to understand the reasonings and actions of the caseworker. The case worker is highly experienced and sensitive to the needs of a stable family. Unfortunately, the mother thought the caseworker was "out to get her." A totally wrong conclusion, but this caused the mother to stop communicating with the caseworker or anybody else in the petitioner's office. Because of this failure to advise the petitioner of her address and her employment, the petitioner suspended visitation.
CT Page 962 However, the foster parents did not stop the visitation. They encouraged it. So after a hiatus in visitation, it resumed through the good offices of the foster mother and the mother's mother, who provided the transportation, as the children were placed in another part of the state.
In fact, the mother became encouraged enough to seek more visitation through the petitioner's in-house administrative procedures and successfully won it.
The woman has shown continued personal growth, more stability, increased her self-esteem and never abandoned her girls. She is well aware of all their differing needs and abilities.
The Court finds the mother has overcome her early parental deficiencies and deserves the opportunity to be the parent directly responsible for the care, guidance and upbringing of these girls.
The Court is well aware that over these last three years the girls have formed strong bonds of affection with the present foster parents. This is only natural. These foster parents, who are in their sixties, are more like grandparents to the children. They have done a good job both with the children and their mother.
The Court finds the petitioner has not sustained its heavy burden of proof and denies the petitions as to the mother.
The Court would hope that the petitioner would return the children to the mother in time to begin school in September, keeping only a limited protective supervision in place to assist in the transition. If all goes well, perhaps the petitioner, after a few months, could then happily say it was time to close the case as the petitioner had achieved its objectives, a reunited, stable family.
As to each petition, judgment shall enter in favor of the petitioner only with reference to the father and in favor of the mother.
PATRICIA A. GEEN, Judge.